[Civ. No. 18318. Fourth Dist., Div. One. Oct. 19, 1979.]

KATHRYN RAWLINGS, Plaintiff and Appellant, v.
D. M. OLIVER, INC., Defendant and Respondent.

COUNSEL

Reed, Sullivan, Reed & Finch and T. Michael Reed for Plaintiff and Appellant.

Wingert, Grebing, Anello & Chapin, Michael M. Anello and Charles R. Grebing for Defendant and Respondent.

## OPINION

**WIENER, J.—** ■ A manufacturer is strictly liable in tort for injuries proximately caused by a defect in design or manufacture of the product provided the product is used in a manner reasonably foreseeable by the manufacturer. (*Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 62-63 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049]; *Cronin* v. *J.B.E. Olson Corp.* (1972) 8 Cal.3d 121, 126 [104 Cal.Rptr. 433, 501 P.2d 1153].) In *Ray* v. *Alad Corp.* (1977) 19 Cal.3d 22 [136 Cal.Rptr. 574, 560 P.2d 3], our Supreme Court, after examining the underlying policy considerations, extended strict products liability to a successor corporation as a special exception to the general rule against imposition upon a successor corporation of its predecessor's liabilities where (1) the plaintiff was deprived of an adequate remedy against the predecessor, (2) the successor possessed the knowledge necessary for gauging the risk of injury from potential defects in the product and was able to spread the cost of the risk among current purchasers of its product line, and (3) the good will of the predecessor was transferred to the successor. (*Id.,* at p. 31.)

In this appeal, we face a variation of the foregoing—whether a successor corporation, having purchased the business and certain of the assets of a manufacturer, has strict tort or negligence liability for defective products where the product was not mass-produced, but manufactured in accordance with the plans and specifications of the owner. ■ For reasons which we will discuss, we reach the following conclusions: (1) A manufacturer may be liable for product defects based on negligence or strict products liability even where the product is manufactured in accordance with the owner's plans, (2) a successor corporation may be liable for its predecessor's tort liability depending on the terms of the written agreement between the parties, and (3) where the predecessor's obligation is based on strict liability, the successor corporation may be liable for a product defect under the principles expressed in *Alad* even where the product was not mass-produced and the successor did not continue the identical product line.

### Factual and Procedural Background

In February 1969, Warren D. and Dorothy A. Stubbendieck, doing business as Warren Industrial Sheet Metal (Warren Industrial), began manufacturing nine identical kelp dryers for Kelco Company, in accordance with plans and specifications furnished by Kelco. The equipment

was installed in October 1969. On October 6, 1976, plaintiff Kathryn Rawlings (Rawlings), an employee of Kelco, injured her hand when a coemployee turned on one of the dryers while plaintiff was cleaning it. In her personal injury complaint, plaintiff alleges the dryer was defective because it contained unguarded gears, it had no shutoff mechanism to protect a worker behind the machine from a coworker activating the machine from the front, and there were no warnings to advise users of the machine's inherent dangers.

In January 1977, David M. Oliver purchased certain of the assets of Warren Industrial. Mr. and Mrs. Stubbendieck retained the land and building where the business was located, cash on hand, and accounts receivable. Mr. Stubbendieck died at an unspecified date after the sale. No information concerning his estate is in the record. In July 1977, the business was incorporated as D. M. Oliver, Inc. (Oliver), doing business as Warren Industrial Sheet Metal.

Plaintiff's action based on strict liability in tort and negligence was filed September 22, 1977. Oliver moved for summary judgment on the grounds that strict products liability did not apply because (1) the manufacturer complied with the plans and specifications prepared by the owner, and (2) as successor to the business of the manufacturer, it was not liable for its predecessor's defective products. The motion was supported by two declarations including the declaration of David M. Oliver, president of Warren Industrial. Attached to his declaration was the agreement between the Olivers and Stubbendiecks for the purchase of the business of Warren Industrial. There were no declarations filed by plaintiff in opposition to the motion. Summary judgment was granted; Rawlings appeals.

*Rules Governing Motions for Summary Judgment*

■ A motion for summary judgment is granted if all the papers show "there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c.)

The summary judgment procedure is a drastic measure depriving the losing party of a trial on the merits and may not be granted unless it is clear from the affidavits or the declarations filed in connection with the motion that there are no triable issues of fact. (*People* ex rel. *Riles* v. *Windsor University* (1977) 71 Cal.App.3d 326, 331 [139 Cal.Rptr. 378].) ■ The affidavits or declarations of the moving party are to be

strictly construed and those of the opponent liberally construed. (*Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 873 [127 Cal.Rptr. 110].) The court need not look to any counteraffidavits or counterdeclarations unless the moving party's declaration standing alone, but considered in light of the pleadings, would support the summary judgment motion. (*Residents of Beverly Glen, Inc.* v. *City of Los Angeles* (1973) 34 Cal.App.3d 117, 127 [109 Cal.Rptr. 724].) In all cases, any doubts as to whether summary judgment is proper should be resolved against the moving party. (*Buehler* v. *Oregon-Washington Plywood Corp.* (1976) 17 Cal.3d 520, 526 [131 Cal.Rptr. 394, 551 P.2d 1226].) Thus, regardless of the absence of plaintiff's opposing declarations, we are still required to decide whether defendant has satisfied its burden.

### A Manufacturer Is Not Immune From Products Liability Because It Complied With Plans Furnished by the Owner

■ A supplier of a product, whether as manufacturer or seller, may have liability based on negligence where he knows or has reason to know the product is dangerous for the use supplied and fails to exercise reasonable care to give warning of its dangerous condition. (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, §§ 607-608, pp. 2888-2889; Rest.2d Torts, § 394; *Crane* v. *Sears, Roebuck & Co.* (1963) 218 Cal.App.2d 855, 859 [32 Cal.Rptr. 754].) A manufacturer may also be strictly liable for its failure to warn of the potential hazards in using the product. (*Midgley* v. *S.S. Kresge Co.* (1976) 55 Cal.App.3d 67, 74 [127 Cal.Rptr. 217].)

Plaintiff's complaint contains all the necessary averments including the allegations that the product was dangerous and warnings were necessary. Neither defendant's general statement that a manufacturer is not liable for injuries caused by a defective product where the product is manufactured in accordance with plans furnished by the owner[1] nor its declara-

---

[1]Defendant relies on *Barnthouse* v. *California Steel Buildings Co.* (1963) 215 Cal.App.2d 72 [29 Cal.Rptr. 835], for this proposition. *Barnthouse* is inapposite—involving the liability of an independent contractor for injuries suffered by a young girl when she fell from the grandstand built by the contractor. The *Barnthouse* court, relying on *Johnson* v. *City of San Leandro* (1960) 179 Cal.App.2d 794, 801 [4 Cal.Rptr. 404], reversed the judgment in favor of plaintiff on the basis that a general contractor is not liable to a third person for injuries resulting from a structural defect where the contractor has performed in accordance with the plans and specifications furnished by the owner and the completed work has been accepted by the owner. The injury-causing defect is the proximate result of the plans and specifications, and not the result of the contractor's negligence. (*Barnthouse*, at p. 74; *Johnson*, at p. 801.) The *Barnthouse* court, however, only reversed—it did not enter a judgment for defendant. The reversal required a new trial and, as discussed in the concurring opinion (*Barnthouse*, at pp. 77-78), the contractor could *still* be liable if it created a dangerous condition which should have been obvious to

tions resolve the questions raised by the pleadings. The dangerousness of the product and the duty to warn, if any, remain triable issues of material fact.

### A Manufacturer May Be Held Strictly Liable for Defects in a Product Even Though It Is Not Mass-produced

Oliver contends strict tort liability does not apply because the product alleged to be defective was not mass-produced and sold to the general public. (See, e.g., *Greenman* v. *Yuba Power Products, Inc., supra,* 59 Cal.2d 57 [a mass-produced power tool sold to the public through a retailer]; *Vandermark* v. *Ford Motor Co.* (1964) 61 Cal.2d 256 [37 Cal.Rptr. 896, 391 P.2d 168] [a mass-produced automobile advertised by the manufacturer and sold to the public through a retailer].) The machine is claimed to be a special piece of equipment fabricated in 1969 by Oliver's predecessor for Kelco in accordance with Kelco's plans.

Oliver, however, has not factually supported this argument. Its declarations contain no information relating to products manufactured by Warren Industrial after 1969. Whether similar machines or different models of the same machine were produced for other purchasers is unknown. Triable issues of fact remain on these questions.

Assuming, however, the particular piece of machinery alleged to be defective was not the typical product manufactured by defendant's predecessor, the same conclusion is reached.

Concern for victims is stated to be the "paramount policy" to be promoted by strict products liability. (*Price* v. *Shell Oil Co.* (1970) 2 Cal.3d 245, 251 [85 Cal.Rptr. 178, 466 P.2d 722].) Its purpose is also to transfer the cost of injuries caused by defective products from the injured person, powerless to protect himself, to the manufacturer (*Greenman* v. *Yuba Power Products, Inc., supra,* 59 Cal.2d 57, 63), thus spreading the cost of compensating victims throughout society as a cost of doing business by the manufacturer. (*Seely* v. *White Motor Co.* (1965) 63 Cal.2d 9, pp. 18-19 [45 Cal.Rptr. 17, 403 P.2d 145].)

Defendant's predecessor does not appear to have been an occasional seller. (Rest.2d Torts, § 402A, com. f.) It appears to have been engaged in

---

a licensed contractor. Thus *Barnthouse* does not create the blanket immunity urged by defendant. (See *Barnthouse* conc. opn., p. 77; *Stewart* v. *Cox* (1961) 55 Cal.2d 857 [13 Cal.Rptr. 521].) We do not belabor the distinction in strict products liability between a conventional manufacturer and a builder.

manufacturing and selling products as part of its full time commercial activity. ▮ The uniqueness of Kelco's order may not alter its responsibilities. (See *Douglas* v. *E. & J. Gallo Winery* (1977) . 69 Cal.App.3d 103, 113 [137 Cal.Rptr. 797].)

*A Successor Manufacturer May Be Liable for Its Predecessor's Debts Pursuant to an Assumption Agreement or Where the Obligation Is Based on Strict Tort Liability Under the Exemption Established in* Ray v. Alad Corp., 19 Cal.3d 22 [136 Cal.Rptr. 574, 560 P.2d 3]

Oliver bases its argument on the absence of successor tort liability on the terms of the written agreement and the general rule that a corporation purchasing the principal assets of a business does not assume the seller's liabilities. We discuss each separately.

*Agreement to Assume the Seller's Liabilities*

The Stubbendiecks started Warren Industrial in 1952. At the time of its sale in 1977, they owned the land and buildings where the business was located. In January 1977, they, as "sellers," signed an agreement for sale to David M. Oliver and his wife, as "buyers" of "all of the business and certain properties" of Warren Industrial, including good will and all of the tools, machinery and equipment connected with the business. The buyers also obtained the sellers' covenant not to compete and their promise to lease the facilities where the business was located. The agreement, generally in boilerplate form, provided for a closing date at which time all the necessary documents were to be delivered to the proper parties. Presumably all such documents were delivered, thus permitting the business to be conducted after the closing in the same manner as it had been previously. The Olivers incorporated the business in July 1977 and, according to the declaration of David M. Oliver, continued to do business as Warren Industrial after that date.

▮ One exception to the general rule of successor corporate liability is where there is an express or implied agreement to assume the seller's liabilities. Oliver asserts it cannot fall within that exception, for the heading of paragraph 4 of the contract states: "NO ASSUMPTION OF LIABILITIES AND NO WARRANTIES" and David M. Oliver declared: ". . . I did not purchase the liabilities of the corporation. . . ."

Plaintiff, however, directs us to paragraph 8, subdivision (c) of the agreement which provides: "The section and other headings contained in

this Agreement are for reference purposes only and *shall not affect the meaning or interpretation of this Agreement."* (Italics added.) She also points out that the body of paragraph 4 is different than might have been inferred from its title. It says: "It is expressly understood and agreed that Buyers shall not be liable *to Sellers* for any of the obligations or liabilities of Sellers of any kind and nature and that Buyers are acquiring the assets and business referred to above *'as is'* without warranty from Sellers concerning the condition of same, physical, *financial* or otherwise. Buyers have made their own investigation and are not acting in reliance of anything said or done by Sellers." (Italics added.)

What the parties meant by the phrase "as is" is unclear. One possible meaning is that the buyers were to assume liability for all debts not expressly disclaimed—they were proceeding at their own risk after making their independent investigation. It is also unclear, indeed unusual, to have limited Oliver's liability only "to Sellers" as provided by the contract. Because the agreement is ambiguous and the necessary extrinsic evidence to interpret the agreement in the manner desired by Oliver is lacking, Oliver has not met the requisite burden for summary judgment. It has not satisfactorily eliminated the reasonable inferences drawn from the agreement that support the existence of either an express or implied assumption of liabilities.

*The Strict Tort Liability Exemption of Ray v. Alad Corp.*

Defendant claims it cannot be liable for strict products liability for it does not fall, either factually or legally, within the exception to successor liability created in *Ray* v. *Alad Corp., supra,* 19 Cal.3d 22.

In *Alad,* plaintiff suffered injuries from a defective ladder manufactured by Alad I, a corporation. Several months before the injury, Alad II had acquired the good will, plant, equipment, inventory and trade name of Alad I for an adequate cash consideration. As part of the purchase agreement, Alad I was dissolved and Alad Corporation (Alad II) was formed. The business continued under Alad II without any apparent change in ownership. The same line of ladders under the "Alad" name was manufactured. The agreement did not contain any provisions for successor liability for products manufactured or sold by Alad I. Our Supreme Court reversed the summary judgment in favor of Alad II, holding: "[A] party which acquires a manufacturing business and continues the output of its line of products under the circumstances here presented assumes strict tort liability for defects in units of the same

product line previously manufactured and distributed by the entity from which the business was acquired." (*Id.,* at p. 34.)

On the facts, Oliver points to the difference in the dates of the respective injuries. In *Alad,* plaintiff was injured more than six months after the predecessor corporation was dissolved. Here, the injury occurred three months before defendant purchased the business. ■ Rawlings' rights, however, cannot turn on the closing date for the sale of a business over which she had no control. The timeliness of her action is governed solely by the applicable statute of limitations and not whether she was injured before or after the sale.

Oliver also directs us to the fact that the predecessor manufacturer in *Alad* was a corporation while here it was a sole proprietorship. This difference, standing alone, is not conceptually significant (see *Cyr* v. *B. Offen & Co., Inc.* (1st Cir. 1974) 501 F.2d 1145, 1152; *Ray* v. *Alad Corp., supra,* 19 Cal.3d 22, 29, fn. 4) except possibly when taken together with defendant's argument relating to the adequate remedy preserved to plaintiff in her action against Mrs. Stubbendieck. Although there is no hint of fraud or inadequate consideration in the Stubbendieck-Oliver transaction, Mr. Stubbendieck is now deceased. His date of death, the period in which claims were to have been filed against his estate, the size, nature and distribution of that estate are all unknown. The interest of Mrs. Stubbendieck in Warren Industrial or in her husband's estate is also unknown. The same barriers to plaintiff's recovery and the virtual destruction of her remedy against the predecessor manufacturer as expressed in *Alad* (19 Cal.3d at pp. 31-32) may be present in the case at bench. Whether plaintiff has a satisfactory remedy against Mrs. Stubbendieck remains a triable issue of material fact.

In our view, *Alad* should not be construed so narrowly as to create an exclusive exception to the general rule for successor liability permitting a similar result only in an *Alad* clone. It is essential to focus on the policy considerations underlying strict products liability rather than merely counting the factors mentioned in *Alad* and giving each equal weight. The constant theme of strict tort liability has been "to elevate justice and equity above the exact contours of a mathematical equation. . . ." (*Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725, 742 [144 Cal.Rptr. 380, 575 P.2d 1162].)

■ Fundamental fairness has been sought through a balancing of the rights of the injured party against the rights of those engaged in

business, including the latter's reasonable commercial expectations. Placing the economic burden of injuries on those best able to pay for those costs while permitting the transfer of that burden to those most culpable is consistent with the equitable considerations inherent in the resolution of the difficult problems which have been judicially posed. (See *Li* v. *Yellow Cab. Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]; *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899]; *Daly* v. *General Motors Corp., supra,* 20 Cal.3d 725.) The thrust from our high court as a matter of first priority has been to maximize recovery for the victim. (See *Sears, Roebuck & Co.* v. *International Harvester Co.* (1978) 82 Cal.App.3d 492 [147 Cal.Rptr. 262].) The broader interpretation we give to *Alad* is in line with these principles.

Oliver bought a going business including its good will and continued that business at the same location under the same fictitious name as its predecessor. Where one takes the benefit one ordinarily should bear the burden. (*Alad,* 19 Cal.3d at p. 34; Civ. Code, § 3521.) Oliver, unlike plaintiff, was in a position to protect itself from loss by expressly providing for that risk in the bargain it made with sellers. Even now, by cross-complaining for indemnity, Oliver can transfer the economic burden to the responsible party. (*American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d at p. 607.)

As a practical matter, postsale Warren Industrial is in the same position as its predecessor to spread the costs of injuries among its current customers. The alleged termination of the product line by Oliver as we have previously stated is not supported by the record. Moreover, manufacturing activity by its very nature involves modification of a product line or elimination of an unprofitable item. Strict products liability is not based upon fault—the successor need not be "morally" responsible for the defect to incur liability. The manner in which the successor company elects to use the good will of its predecessor in marketing its products is irrelevant to the issue of whether the costs of injuries sustained as a result of defective products previously manufactured may be spread over society. The general business continued by the manufacturer and its ability to spread those costs must be considered and not merely whether a specific line of products was discontinued.

We recognize this decision adds another troublesome wrinkle to the sale of businesses impinging on the policy of encouraging the free transferability of capital (*Alad,* 19 Cal.3d at p. 25). Nevertheless, for all of

the reasons discussed, we hold this case comes within the exception created in *Alad* and therefore successor liability on the basis of strict products liability may be imposed.

Judgment reversed.

Brown (Gerald), P. J., and Focht, J.,* concurred.

A petition for a rehearing was denied November 5, 1979, and respondent's petition for a hearing by the Supreme Court was denied December 13, 1979.

---

*Assigned by the Chairperson of the Judicial Council.