JOURNAL ENTRY and OPINION
{¶ 1} Appellant Kenneth Auvil appeals the trial court's granting of summary judgment in favor of appellee Glowe Industrial Sales ("Glowe Industrial"). Auvil assigns the following two errors for our review:
"I. The trial court erred as a matter of law in granting the motion for summary judgment of defendant-appellee Glowe Industrial Sales."
"II. The trial court abused its discretion in denying plaintiff-appellant Kenneth Auvil's motion for reconsideration of the order granting defendant-appellee Glowe Industrial Sales' motion for summary judgment."
 {¶ 2} Having reviewed the record and pertinent law, we reverse and remand the decision of the trial court. The apposite facts follow.
 {¶ 3} Auvil filed a complaint for intentional tort and product liability for injuries he sustained while working on a slitter machine for his then-employer, Ferragon Corporation. Auvil sued Ferragon Corporation, along with Ferragon's related corporations Ferrous Metal Processing Company and Ferrous Metal Processing Incorporated, for intentional tort. The remaining parties were sued for product liability, Glowe International as the designer of the machine and ADS Manufacturer as the manufacturer of the machine.[1]
 {¶ 4} After discovery was completed, Glowe Industrial filed a motion for summary judgment contending that Auvil's expert witness had failed to state Glowe Industrial had designed the machine. The expert report stated that "Glowe Smith Industrial," which existed prior to the formation of Glowe Industrial, negligently designed the machine. Glowe Industrial claimed that because it did not exist at the time the machine was designed, it was not liable.
 {¶ 5} Auvil opposed the motion and argued, citing to attached evidentiary materials, that Glowe Industrial was a successor-in-interest of Glowe Smith and thus liable for Glowe Smith's negligent design.
 {¶ 6} The evidence indicated that the Glowe family owns and operates several family businesses. In 1978, the father founded Glowe Smith, which was a design firm for steel processing machines. The son joined Glowe Smith after finishing college in 1988.
 {¶ 7} In 2001, Glowe Smith ceased doing business because of financial problems. At this time, several liens had been filed against the company. Glowe Smith did not, however, file for bankruptcy until 2003, and its debts were not discharged until January 2004.
 {¶ 8} At the time Glowe Smith ceased doing business in 2001, the son formed Glowe Industrial and became the president of the company. The purpose of forming Glowe Industrial was to support Glowe Smith's former client, GSI Technology. GSI Technology holds the license to a patent that Glowe Smith was marketing to clients. The son admitted that Glowe Smith did the same work for GSI Technology that Glowe Industrial did. However, because Glowe Smith's financial difficulties ruined Glowe Smith's business reputation, GSI Technology wanted a "fresh face" to market its patent. Therefore, once Glowe Smith ceased doing business, Glowe Industrial was established to take over the GSI Technology account.
 {¶ 9} When Glowe Industrial was formed, it used the same building and same physical assets as Glowe Smith. The father and son were also the corporate officers of Glowe Industrial, as they were with Glowe Smith. All of the Glowe Industrial employees were former employees of Glowe Smith.
 {¶ 10} Although the son founded Glowe Industrial and was the president of the company, once Glowe Smith's debts were discharged in bankruptcy, the son sold Glowe Industrial to his father for one dollar, on April 19, 2004. The purchase was backdated to January 1, 2004.
 {¶ 11} The trial court granted Glowe Industrial's motion for summary judgment stating:
"Plaintiff's expert report fails to implicate defendant Glowe Industrial Sales in the negligent design or manufacture of the machine at issue in this suit. The expert opinion places liability on non-party Glowe Smith Industrial and fails to mention any opinion or facts that would impose liability on defendant Glowe Industrial Sales, which was not in existence at the time the machine was designed or manufactured."[2]
 {¶ 12} Prior to the trial court's ruling, Auvil had also filed a motion to amend his complaint to add the successor liability claim. The trial court, however, ignored the motion and instead granted the motion for summary judgment.
 {¶ 13} Auvil filed a motion to reconsider the trial court's granting of summary judgment arguing the trial court failed to address his successor liability claim. Auvil requested, in the alternative, that the trial court attach Civ. R. 54(B) language so that the issue could be appealed. The trial court denied the motion for reconsideration because Auvil had not provided "any new evidence or law to warrant reconsideration of the journal entry." The trial court, did, however, order that the Civ. R. 54(B) language, "no just reason for delay" be attached to its order granting summary judgment.
 {¶ 14} In his first assigned error, Auvil argues the trial court erred in granting Glowe Industrial's motion for summary judgment. He argues he presented sufficient evidence that Glowe Industrial was a continuation of Glowe Smith to overcome a motion for summary judgment. We agree.
 {¶ 15} We review an appeal from summary judgment under a de novo standard of review.[3] Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.[4] Under Civ. R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can reach only one conclusion which is adverse to the non-moving party.[5]
 {¶ 16} The moving party carries an initial burden of setting forth specific facts which demonstrate his or her entitlement to summary judgment.[6] If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will be appropriate only if the non-movant fails to establish the existence of a genuine issue of material fact.[7]
 {¶ 17} The evidence presented indicates an issue of fact exists regarding whether Glowe Industrial was a mere continuation of Glowe Smith. The Ohio Supreme Court in Flaugher v. Cone Automatic MachineCo.,[8] held:
"The general rule in products liability is that a successor corporation's amenability to suit will depend on the nature of the transaction which gave rise to the change in ownership. 1 Frumer 
Friedman, Products Liability (1983) 70.58(3), Section 5.06[2]. Where the transfer is accomplished by means of a statutory merger or consolidation, the liability of the former corporation will be assumed by the new entity. Id. Where there is merely a sale of a corporation's assets, the buyer corporation is not liable for the seller corporation's tortious conduct unless one of the following four exceptions applies:
"* * *
"(3) the buyer corporation is merely a continuation of the seller corporation; or
"(4) the transaction is entered into fraudulently for the purpose of escaping liability. Id. at 70.58(4); Burr v. South Bend Lathe, Inc.
(1984), 18 Ohio App.3d 19, 18 OBR 43, 480 N.E.2d 105; Annotation, Products Liability: Liability of Successor Corporation for Injury or Damage Caused by Product Issued by Predecessor (1975), 66 A.L.R. 3d 824."[9]
 {¶ 18} The evidence indicates that Glowe Smith ceased doing business in 2001. By that time, several tax liens had been filed against Glowe Smith. It was not until August 13, 2003, that Glowe Smith filed for bankruptcy, and its debts were not discharged in bankruptcy until January 30, 2004. These dates are important when considering the formation and eventual sale of Glowe Industrial.
 {¶ 19} Glowe Industrial was formed at approximately the same time that Glowe Smith ceased doing business in 2001. Shortly beforehand, the son, Douglas Glowe, resigned his position as CEO of Glowe Smith. He then went on to form Glowe Industrial and became its president and his father became the CEO. The son admits that Glowe Industrial was established to carry on the business of Glowe Smith's client, GSI Technology, which held the license to a patent Glowe Smith was marketing to its clients. However, because Glowe Smith's business reputation was tarnished by its financial problems, the client no longer wanted Glowe Smith to market the patent. Therefore, the son formed Glowe Industrial to provide a "fresh face" for GSI Technology's patent. Thus, although Glowe Industrial argues it does not have the same clients or conduct the same business as Glowe Smith, they both had GSI Technology as a client and provided the same service for the company, namely, the marketing of the patent.
 {¶ 20} Additionally, although in 2001, Glowe Smith in theory still existed, albeit it ceased doing business, Glowe Industrial assumed the office space of Glowe Smith, which gives the indicia they were one and the same. Glowe Industrial also took over all of the assets of Glowe Smith, which consisted of office furniture and equipment. Glowe Industrial's corporate officers were the same as Glowe Smith's, and all of Glowe Industrial's employees were former employees of Glowe Smith.
 {¶ 21} Therefore, although Glowe Industrial did not formally purchase Glowe Smith, its takeover of Glowe Smith's assets, location, and assumption of its employees and most important account, created the same result as a purchase, without assuming Glowe Smith's financial liabilities.
 {¶ 22} Moreover, on April 19, 2004, several months after Glowe Smith's debts were discharged by the bankruptcy court, the father purchased Glowe Industrial from his son for the nominal sum of one dollar. Pursuant to the purchase agreement, the ownership was to be retroactive to January of 2004. Therefore, it appears the father was able to keep the valuable GSI Technology account by having his son take over the account via the establishment of Glowe Industrial. After the father's debt relating to Glowe Smith had been discharged, he was able to resume ownership of the business by purchasing Glowe Industrial from the son, thereby purging Glowe Smith's financial problems and reputation, while retaining the most profitable portion of the company.
 {¶ 23} We conclude, construing this evidence in a light most favorable to Auvil, there are issues of fact regarding whether Glowe Industrial is a mere continuation of Glowe Smith. Glowe Industrial did not even attempt to rebut Auvil's evidence of successor liability. The trial court obviously ignored the evidence submitted by Auvil as further indicated by its failure to rule on Auvil's motion to amend the complaint to add the successor liability claim. Accordingly, Auvil's first assigned error is sustained.
 {¶ 24} In his second assigned error, Auvil argues the trial court erred by denying his motion for reconsideration. Because of our disposition of the first assigned error, Auvil's second assigned error is moot and need not be addressed.[10]
Judgment reversed and remanded.
This cause is reversed and remanded.
It is, therefore, considered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate issue out of said Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Rocco, J., and Kilbane, J., concur.
[1] Only the claim against Glowe Industrial is the subject of the instant appeal. The action is still pending as to the other defendants. The trial court found no just reason for delay in granting summary judgment in favor of Glowe.
[2] Journal Entry, September 30, 2004.
[3] Baiko v. Mays (2000), 140 Ohio App.3d 1, citing Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35; Northeast Ohio Apt. Assn.v. Cuyahoga Cty. Bd. of Commrs. (1997), 121 Ohio App.3d 188.
[4] Id. at 192, citing Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704.
[5] Temple v. Wean United, Inc. (1997), 50 Ohio St.2d 317, 327.
[6] Dresher v. Burt, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107.
[7] Id. at 293.
[8] (1987), 30 Ohio St.3d 60.
[9] Id. at 62.
[10] App. R. 12(A)(1)(c).