No. 57,487

EDDIE M. BROWN, JR., *Appellant,* v. KLEEN KUT MANUFACTURING
CO., TOLEDO SCALE CORPORATION, RELIANCE ELECTRIC and ENGI-
NEERING CO., and RELIANCE ELECTRIC CO., *Appellees.*

(714 P.2d 942)

Opinion filed
February 21, 1986.

*Jerry M. Ward,* of Ward & Berscheidt, of Great Bend, argued the cause and was on the brief for appellant.

*William H. Seiler, Jr.,* of Bremyer & Wise, P.A., of McPherson, argued the cause and was on the brief, and *Robert D. Ochs,* of Ochs & Kelley, P.A., of Topeka, argued the cause and *Jeffery L. Seibel,* of Dreiling, Bieker & Kelley, of Hays, was on the brief for appellees.

The opinion of the court was delivered by

HERD, J.: This is an action for strict liability in tort for the manufacture and sale of an allegedly defective product. This is an appeal from the district court's grant of summary judgment in favor of the appellees, Toledo Scale Corporation, Reliance Electric and Engineering Company, Reliance Electric Company and Kleen Kut Manufacturing Company, defendants below.

The facts are not in dispute.

The accident giving rise to this action occurred in the summer of 1976. The appellant, who was sixteen years old at the time, was employed as a part-time cook in a restaurant located in Great Bend. On the evening of July 23, 1976, the appellant was directed to grind meat for hamburger. Although this task was not one of his regular duties, he began grinding meat using a meat grinder which bore the decal of Kleen Kut Manufacturing Company, Cleveland, Ohio, Model No. 5132A.

When the appellant attempted to push the meat into the auger, it caught his fingers and pulled his fingers and palm under the auger. His hand was so severely injured it required surgical amputation at the wrist.

Prior to December 15, 1955, Kleen Kut Manufacturing Company (Kleen Kut) operated a factory in Cleveland, Ohio, for the purpose of manufacturing food choppers, including Model No. 5132A meat grinders.

On December 15, 1955, Kleen Kut entered into an agreement with Toledo Scale Corporation (Toledo Scale) whereby Toledo Scale purchased Kleen Kut's assets for $405,650. Included in those assets were inventory, work-in-process, parts, components and raw materials relating to the manufacture and sale of food machines. Toledo Scale also acquired the exclusive right to the name "Kleen Kut" and agreed to enter into a two-year lease of the factory premises owned by Kleen Kut.

Following the sale of assets, Louis Faulb, who was the president of Kleen Kut, was appointed by Toledo Scale as general manager of the Cleveland Manufacturing Division of Toledo Scale, which position he retained for a period of twelve to fifteen months. Additionally, Toledo Scale retained in its employment former employees of Kleen Kut.

Kleen Kut Manufacturing Company was dissolved on November 21, 1956.

Toledo Scale continued to manufacture and sell parts for meat choppers previously manufactured by Kleen Kut and to manufacture and sell, under the name Toledo Scale Corporation, meat choppers and parts formerly manufactured and sold under the name Kleen Kut. Toledo Scale sold replacement parts for the model No. 5132A Kleen Kut meat grinder; however, these parts

were universal replacements parts and fit numerous grinder models.

Toledo Scale merged into Reliance Electric and Engineering Company on October 12, 1967, and Reliance Electric and Engineering Company merged into Reliance Electric Company on February 25, 1969.

Appellant filed the present action on July 17, 1978, against Kleen Kut, Toledo Scale, Reliance Electric and Engineering Company and Reliance Electric Company. On October 8, 1981, the district court granted Kleen Kut's motion to dismiss on the ground that appellant's action could not be maintained against an Ohio corporation on a cause of action filed twenty-two years after the date of dissolution. On October 23, 1984, the court sustained the motion for summary judgment of Toledo Scale, Reliance Electric and Engineering Company and Reliance Electric Company on the ground that these corporations could not be held liable as successor corporations.

Prior to considering the substantive law relating to the corporate liability of both dissolved and successor corporations, we must first examine the conflict of laws question presented by this case.

The specific issue with which we are faced is whether the substantive law of Kansas or Ohio is applicable to the issue of the liability of either a dissolved predecessor corporation or its successor corporation for injuries resulting from a product manufactured by the predecessor. The appellant's injuries were sustained in Kansas. The machine, the use of which resulted in appellant's injuries, was manufactured in Ohio. The appellee corporations are all incorporated in the State of Ohio. Additionally, the transfer of assets from Kleen Kut to Toledo Scale was accomplished pursuant to a contract executed in Ohio.

The appellees argue that under the traditional rule of *lex loci delicti*, Kansas law is applicable. The appellant, however, argues the governing law is that of the jurisdiction where the transfer of assets between the predecessor and successor corporations took place.

We have traditionally applied the rule of *lex loci delicti* to choice of law for tort claims. *McDaniel v. Sinn,* 194 Kan. 625, 400 P.2d 1018 (1965). Under this rule, the law of the state where the tort occurred is applied to the substantive rights of the parties.

We recently reaffirmed this rule in *Ling v. Jan's Liquors,* 237 Kan. 629, 703 P.2d 731 (1985). There, we held that, where injuries were sustained in Kansas as a result of a negligent act in another state, the liability of the defendant is to be determined by the laws of this state. In so holding, we rejected the "analytical approach" for determining what laws should govern the substantive rights of the parties.

Appellant here does not suggest we reject *lex loci delicti* and adopt the analytical approach. Rather, appellant contends that, in an action against a dissolved manufacturing corporation and its successor, the law of the jurisdiction where the transfer of corporate stock and assets was made should govern, rather than the law of the place where the injuries occurred. In support of his contention, appellant cites *Bonee v. L & M Const. Chemicals,* 518 F. Supp. 375 (M.D. Tenn. 1981). There, a Tennessee plaintiff brought suit as administrator of the estate of Roy Bonee, who died from injuries he received when an oil drum exploded and severely burned him. The flammable construction sealer which exploded in the drum was manufactured by an Illinois corporation, which later transferred its assets to an Ohio corporation. The court noted that Tennessee follows the *lex loci delicti* rule and that under that rule the substantive law of the state in which the tort occurred governs. Rather than apply this rule, however, the court characterized the case as presenting a contract question—*i.e.,* what is the legal effect of the sale of the assets of one corporation to another corporation? 518 F. Supp. at 379. Under Tennessee law, the rights to the parties to a contract are governed by the laws of the state in which the contract was entered into. Therefore, the Tennessee court determined that Ohio's substantive law was applicable.

The *Bonee* court stated:

"Because the basic question in this case is what is the legal effect of the sale of virtually all of the assets of one corporation to another corporation, under Tennessee conflicts rules the substantive law of Ohio applies. Although characterizing the case as contractual for the purpose of this issue and tortious for purposes of determining liability may seem disjointed, *see Korzetz v. Amsted Industries, Inc.,* 472 F. Supp. 136, 138-42 (E.D. Mich. 1979), it is the correct approach. One of the purposes of using choice-of-law rules is to ensure the uniform application of substantive law. The rights of a corporation that contracts in Ohio to purchase the assets of another corporation should be the same with respect to assumption of liability for personal injuries regardless of where the personal injury occurs. For example, if the parties had specifically agreed that

Dayton would assume liability for all injuries arising out of the use of BCS' products no one would dispute the characterization of the issue presently before the Court as contractual. The characterization should be no different simply because the parties did not expressly address the issue in their agreement." pp. 379-80.

See also 63 Am. Jur. 2d, Products Liability § 879, p. 1255.

After examining the options, we are persuaded that the law of the jurisdiction where the corporation was formed, and where the transfer of corporate stock and assets took place, should govern the liability of a dissolved predecessor corporation and its successor corporation for injuries arising from use of a product manufactured by the dissolved predecessor corporation. Kansas tort law governs the nature of the cause of action available to the injured party, *i.e.*, strict liability.

Appellant first argues the trial court erred in granting summary judgment in favor of Kleen Kut. The trial court concluded that the filing of suit by appellant twenty-two years after the dissolution of a corporation is impermissible under Ohio law.

At common law, a corporation's capacity to sue or be sued terminated when the corporation was legally dissolved. 16A Fletcher, Cyclopedia of the Law of Private Corporations § 8142 (rev. perm. ed. 1979). However, all jurisdictions now have statutes dealing with the matter of litigation by and against corporations after dissolution.

In determining whether a dissolved corporation has the capacity to be sued, we look to the law of the state of incorporation. 36 Am. Jur. 2d, Foreign Corporations § 446, p. 454. Thus, as previously held, we will consider Ohio law in determining whether appellant can maintain an action against Kleen Kut, a dissolved Ohio corporation. The applicable Ohio statute provides:

"(B) Any claim existing or action or proceeding pending by or against the corporation or which would have accrued against it may be prosecuted to judgment, with right of appeal as in other cases, but any proceeding, execution, or process, or the satisfaction or performance of any order, judgment, or decree, may be stayed as provided in section 1701.89 of the Revised Code." Ohio Rev. Code Ann. § 1701.88(B) (Page 1985).

Ohio appellate courts have not considered this statute as it relates to the factual context at hand. We are cited, however, to a federal district court decision from Ohio in which § 1701.88 was construed and applied to a fact situation similar to our own. In

*Chadwick v. Air Reduction Company,* 239 F. Supp. 247 (N.D. Ohio 1965), plaintiffs sought recovery for personal injuries sustained when an infant's foot became lodged in the heating element of a baby incubator. The incubator was manufactured by an Ohio corporation which was dissolved some two years prior to the injury. The defendant argued for dismissal, contending a suit could not be maintained against a dissolved Ohio corporation on a cause of action accruing after the date of dissolution.

The court held the phrase in § 1701.88(B) "or which would have accrued against it" referred to causes of action not yet sued upon at the time of dissolution. In order to so hold, the court inserted the following bracketed language into the statute:

" 'Any claim existing [not yet sued upon] or action or proceeding [already commenced] pending by or against the [dissolved] corporation or [any claim not yet sued upon or action or proceeding] which would have accrued against it [had dissolution not occurred] may be prosecuted to judgment, with right of appeal as in other cases . . . .' " 239 F. Supp. at 251.

The court's decision in *Chadwick* must be restricted to the facts of that case—*i.e.,* where an action is brought within two years after a corporation's dissolution, it may be allowable under § 1701.88(B). However, *Chadwick* does not stand for the proposition that a claim can be brought against a dissolved Ohio corporation for an indefinite period of time.

The trial court here considered *Chadwick* but rejected its interpretation and instead found that § 1701.88(B) extends a corporation's existence after dissolution only for a "reasonable" length of time. The trial court reasoned that such a finding is in line with the public policy of Ohio. Specifically, the trial court held:

"[T]he public policy of Ohio is that continued corporate existence after dissolution exists as a concept for the purpose of facilitating corporate affairs and not for the purpose of providing relief for plaintiffs forever."

Thus, in the absence of any conflicting decision from Ohio appellate courts, we adopt the trial court's analysis and find that Ohio Rev. Code Ann. § 1701.88(B) (Page 1985) extends a corporation's existence after dissolution only for a reasonable period of time. In the instant case, appellant's claim was brought twenty-two years after Kleen Kut was legally dissolved. Such a claim was not within the scope of § 1701.88(B) and the trial court properly granted Kleen Kut's motion for dismissal, styling it as a summary judgment.

Next, we must consider the issue of a successor corporation's liability for injuries resulting from the use of an allegedly defective product manufactured by its predecessor.

The trial court granted summary judgment in favor of appellees Toledo Scale Corporation, Reliance Electric and Engineering Company and Reliance Electric Company. The trial court ruled that under the traditional rule governing successor liability, the appellees were not liable to the appellant. As previously stated, Ohio law governs the issue of a successor corporation's liability for injuries arising from use of a product manufactured by its predecessor.

The general rule of successor liability is stated as follows:

"The general rule . . . is that where one company sells or otherwise transfers all its assets to another company, the latter is not liable for the debts and liabilities of the transferor. . . . An express agreement, or one that can be implied, to assume the other company's debts and obligations, is necessary; or the circumstances must warrant a finding that there was a consolidation or merger of the corporations, or that the transaction was fraudulent in fact, or that the purchasing company was a mere continuation of the selling company; the foregoing constitute two so-called exceptions to the general rule." 15 Fletcher, Cyclopedia of the Law of Private Corporations § 7122 (rev. perm. ed. 1983).

See also *Comstock v. Great Lakes Distributing Co.,* 209 Kan. 306, 310, 496 P.2d 1308 (1972).

This general rule was followed and applied by the Ohio Court of Appeals in *Burr v. South Bend Lathe, Inc.,* 18 Ohio App. 3d 19, 480 N.E.2d 105 (1984). There, the plaintiff was injured by an allegedly defective and unreasonably dangerous mechanical press manufactured by Johnson Machine and Press Corporation. The defendant, South Bend Lathe, Inc., was a successor to Johnson Machine and continued to manufacture and sell "Johnson" brand machine presses. However, South Bend Lathe assumed no liability for products manufactured by its predecessor.

The Ohio court stated the basic issue as being whether a manufacturing corporation can be held strictly liable under a product liability theory for injuries sustained as a result of a defective product manufactured by a corporation distant in time and corporate existence from the defendant, where both corporations manufactured similar products under the same trade name but where defendant assumed no liability for products manufactured by its predecessor.

The Ohio court held that South Bend and its predecessor dealt at arms length, there was no evidence of mixture of officers or stockholders and the two entities were separate and distinct. Additionally, the court noted that there was no evidence of inadequate consideration running from South Bend to its predecessor and South Bend assumed no liabilities of its predecessor. The court then concluded that all of these factors, particularly the absence of an agreement by South Bend to assume the liabilities of its predecessor, required a finding that South Bend was not liable for injuries caused by products placed in the stream of commerce by its predecessor.

The controlling facts in the present case are very similar to those in *Burr.* Here, there was an outright sale of assets from Kleen Kut to Toledo Scale, with no transfer of stock or continuity of ownership. Toledo Scale neither expressly nor impliedly assumed the liabilities of Kleen Kut. Moreover, there is no indication or allegation that the asset transfer was for less than adequate consideration.

While Toledo Scale continued to manufacture and sell meat grinders similar to the one which caused plaintiff's injuries, this factor alone is not determinative. Rather, following the Ohio court's analysis in *Burr,* the key factor in our determination must be the absence of an agreement by Toledo Scale to assume liability for products sold prior to its purchase of Kleen Kut's assets. Thus, we conclude that the appellees are not liable for injuries caused by products manufactured and sold by Kleen Kut, and the trial court properly granted summary judgment to the defendants.

We recognize that the application of the traditional rule of corporate successor non-liability sometimes leads to seemingly harsh results. Moreover, we are aware that a number of courts have attempted to deal with that harshness by relaxing or expanding existing exceptions to the general rule. See *Mozingo v. Correct Mfg. Corp.,* 752 F.2d 168 (5th Cir. 1985); *Cyr v. B. Offen & Co., Inc.,* 501 F.2d 1145 (1st Cir. 1974); *Polius v. Clark Equipment Co.,* 608 F. Supp. 1541, 1545-47 (D.V.I. 1985); *Bonee v. L & M Const. Chemicals,* 518 F. Supp. 375, 381; and *Rivers v. Stihl, Inc.,* 434 So. 2d 766, 771-72 (Ala. 1983), for cases applying a "continuity of enterprise" theory. See *Ray v. Alad Corp.,* 19 Cal. 3d 22, 136 Cal. Rptr. 574, 560 P.2d 3 (1977); *Ramirez v.*

*Amsted Industries, Inc.,* 86 N.J. 332, 431 A.2d 811 (1981); and *Dawejko v. Jorgensen Steel Co.,* 290 Pa. Super. 15, 434 A.2d 106 (1981), for cases applying the "product line" theory.

Our decision today is neither acceptance nor rejection of such exceptions since we are not applying Kansas law.

The judgment is affirmed.

LOCKETT, J., concurs in the result.