Kenneth L. DEITCHMAN, Plaintiff,

v.

Stephen F. WEINER, Defendant.

No. 94–2278–JWL.

United States District Court,
D. Kansas.

July 14, 1995.

B. Buzz Deitchman, Dallas, TX, for plaintiff.

Richmond M. Enochs, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Overland Park, KS, for defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge. ·

### I. Introduction

In this case plaintiff Kenneth L. Deitchman has brought a claim against defendant Stephen F. Weiner for negligent entrustment of his automobile to his minor daughter. The matter is currently before the court on defendant's motion for summary judgment (Doc. # 29). For the reasons set forth below, defendant's motion is granted.

### II. Factual Background

On July 15, 1992, Stephanie Elise Weiner, defendant's daughter, and plaintiff were involved in a motor vehicle accident at the intersection of 81st Street and Ward Parkway in Kansas City, Missouri. Ms. Weiner, who was sixteen years old at the time of the accident, was driving a 1986 Dodge Colt automobile which belonged to defendant and was driving the automobile with the consent, knowledge and permission of defendant. Ms. Weiner failed to yield the right of way and pulled directly in front of plaintiff, causing the accident. Ms. Weiner died July 30, 1992, as a result of a head injury suffered in the accident. Plaintiff sustained injuries in the accident, including a shoulder injury.

Prior to the date of the accident, Ms. Weiner had completed a driver's education course and had a valid Class C Kansas driver's license.[1] She had not been involved in any prior motor vehicle accidents and had not been convicted of any traffic violations. Defendant, who had been a passenger in a car driven by his daughter on numerous occasions, had no knowledge of any incidents in which his daughter had failed to yield the right-of-way prior to the date of the accident.

### III. Summary Judgment Standards

When considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party. *Langley v. Adams County, Colorado,* 987 F.2d 1473, 1476 (10th Cir.1993). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anthony v. United States,* 987 F.2d 670, 672 (10th Cir.1993). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmovant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511; *Tersiner v. Union Pacific R. Co.,* 740 F.Supp. 1519, 1522–23 (D.Kan. 1990). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555.

### IV. Discussion

Under Missouri law,[2] the essential elements of a claim of negligent entrustment

---

1. Class C is the standard license classification for driving automobiles in Kansas. See K.S.A. § 8–234b(6).

2. A federal court sitting in diversity must apply the substantive law of the state in which it sits, including that state's choice of law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477

(1941). Thus, the court must look to Kansas law to determine which state's laws should be applied. Under Kansas law, courts apply the traditional rule of lex loci delicti to choice of law for tort claims. *Hawley v. Beech Aircraft Corp.,* 625 F.2d 991, 993 (10th Cir.1980); *Brown v. Kleen Kut Manufacturing Co.,* 238 Kan. 642, 644, 714 P.2d 942, 944 (1986). Under this rule, the law of the state where the tort occurred is applied to

are: (1) that the entrustee is incompetent by reason of age, inexperience, habitual recklessness or otherwise; (2) that the entrustor knew or had reason to know of the entrustee's incompetence; (3) that there was an entrustment of the chattel; and (4) that the negligence of the entrustor concurred with the conduct of the entrustee as a proximate cause of the harm to plaintiff. *Evans v. Allen Auto Rental & Truck Leasing Co.*, 555 S.W.2d 325, 326 (Mo.1977); *Shelter Mut. Ins. Co. v. Politte*, 663 S.W.2d 777, 779 (Mo.App. E.D.1983).

■ In the pleadings, defendant has set forth by affidavit and attached deposition testimony that he had intimate knowledge of his daughter's physical condition; that his daughter had no physical problems which would interfere with her ability to drive; that his daughter had completed a driver's education course and had a valid Class C Kansas driver's license; that his daughter had never been involved in any prior motor vehicle accidents and had not been convicted of any traffic violations; that prior to the accident he had been a passenger in a car driven by his daughter on a number of occasions "too numerous to mention"; that he had no knowledge of any incidents in which his daughter had ever failed to yield the right of way prior to the date of the accident; and that at or prior to the date of the accident he had no reason to believe that his daughter was anything other than a safe and fit driver. Accordingly, defendant contends that there is no evidence in the record to show that his daughter had been anything less than a prudent driver and, even if his daughter had been less than a prudent driver, there is nothing in the record to indicate that defendant had notice or knowledge of this prior to the date of the accident.

The court finds that defendant has met his burden of showing that there is an absence of evidence to support the plaintiff's case. Accordingly, it is incumbent on plaintiff to set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

In attempting to create an issue for trial, plaintiff first contends that Ms. Weiner had physical problems which interfered with her ability to drive. In his deposition, defendant discussed the fact that his daughter had a facial deformity at birth, known as craniofacial microsomia, which affected the bones on the right side of her face. She also suffered from strabismus, a condition which caused her eyes to turn slightly inward. Defendant related that around the age of three his daughter underwent minor corrective surgery to align the eyes, which was successful. She also underwent surgery around the age of thirteen at the Kansas University Medical Center, which was followed in 1991 by surgery at Humana Hospital in Dallas, Texas, in an attempt to correct her facial features, which included removing bone from the top of the head and grafting it into the face and to elevate the orbit of the eye.

Based on defendant's testimony regarding the surgeries his daughter had undergone, plaintiff has submitted his own affidavit, as an expert, in which he concludes that "[b]ased on my experience as a doctor, and a driver of automobiles, I believe that the physical problems related to the decedent's vision would have interfered with her ability to drive in a safe and prudent manner." Plaintiff avers that during his years of chiropractic education, he took numerous courses, including general anatomy, which have provided him with a professional knowledge of the human skull and complications to the skull and facial bones and has also attended hundreds of hours of continuing education courses over the years and has certification in Applied Kinesiology, which is the science of muscle movement in the human body. Based on his experience and defendant's deposition testimony, plaintiff concludes there is a very strong possibility that Ms. Weiner's

the substantive rights of the parties. *Id.* In this case, it could be said that the tort occurred in Kansas, which is where defendant allegedly entrusted his vehicle to his daughter. However, Kansas law is clear that where injuries occur in one state as result of a negligent act in another

state, the liability of the parties is to be determined by the laws of the state in which the injury occurred. *See Ling v. Jan's Liquors*, 237 Kan. 629, 703 P.2d 731 (1985). Therefore, since the injury-causing accident occurred in Missouri, the court must apply Missouri substantive law.

lateral movement in her eye was limited and he "believe[s] that [Ms. Weiner] had peripheral vision limitations of the right eye which affected her ability to see vehicles approaching from the side, primarily from the right."

The court finds that plaintiff's proffered affidavit does not create a fact question for trial. In the first place, it is questionable whether a chiropractor qualifies to give expert opinion testimony regarding potential peripheral vision difficulties.[3] However, even more importantly, even if a chiropractor would so qualify and even were a factfinder to accept everything presented in plaintiff's affidavit as true, it does nothing to create a fact question in the present case. Plaintiff's opinion that Ms. Weiner had peripheral vision limitations is based on his "expert" training and experience. Nowhere does plaintiff opine that Ms. Weiner's alleged vision limitation would have been apparent to a lay person or, most important to this case, to defendant. The only evidence regarding any vision limitations of Ms. Weiner is the fact that she wore corrective lenses. Many people do. Ms. Weiner passed the vision test necessary to obtain a Kansas driver's license, and there is no evidence that her vision, peripheral or otherwise, decreased at any time following her passing the vision test. Accordingly, the court finds that there is no evidence in the record to support a finding that defendant was aware his daughter had a vision problem which would make it unsafe for her to drive.

The only other evidence presented by plaintiff is that defendant had knowledge which established that his daughter "was an inexperienced driver." However, at sixteen years of age, virtually everyone is comparatively an inexperienced driver. That fact alone does not automatically make a parent who allows his or her sixteen-year-old to drive liable on a negligent entrustment claim absent any evidence that the parent had reason to know that his or her child's inexperience would make the child an incompe-

tent driver. The only evidence presented in the record indicates that defendant had no such knowledge. In his deposition, defendant noted that his daughter had been driving since she was "somewhere between 14 and 15," she had taken a driver's education course, the defendant had been a passenger in a car driven by his daughter on occasions "too numerous to mention," and that after turning 16, his daughter drove "most anytime we went anywhere...." Based on all these experiences, defendant states that he believed his daughter was a safe and fit driver and that he had no reason to believe otherwise. Plaintiff has presented no evidence to contradict defendant's reasonable belief.

## V.  Conclusion

Following a review of the entire record presented to the court in this case, the court finds that plaintiff has failed to present any evidence which would create a fact question as to whether defendant knew or had reason to know that his daughter was an incompetent driver. Accordingly, his negligent entrustment claim fails.

**IT IS, THEREFORE, BY THE COURT ORDERED THAT** defendant's motion for summary judgment (Doc. # 29) is granted.

**IT IS SO ORDERED.**

---

**3.** Section 331.010 of the Missouri Revised Statutes defines the "practice of chiropractic" as "the science and art of examination, diagnosis, adjustment, manipulation and treatment of malpositioned articulations and structures of the body." A chiropractor is further defined as one declared not in the practice of medicine, operative surgery or osteopathy, but only licensed to adjust, manipulate or treat toward the restoring and maintaining the normal neuromuscular and musculoskeletal function and health.