**Jane DOE, Plaintiff,**

v.

**WTMJ, INC. d/b/a 98.9 FM, KQRC, "The Rock", Defendant.**

No. 95–2472.

United States District Court, D. Kansas.

April 30, 1996.

whether or not a new submission will obtain approval.

Tim E. Dollar, Cramer A. Russell, Stigall, Humphrey, Lucas, Henry, Stigall & Dollar, L.C., Kansas City, MO, for plaintiff.

John J. Jurcyk Jr., McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, John R. Dawson, James L. Huston, Brett H. Ludwig, Foley & Lardner, Milwaukee, WI, for defendant.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

On January 6, 1995, William Connelly pled guilty to kidnapping plaintiff Jane Doe, a minor, and committing an act of oral sex with her on or about February 7, 1994. At the time the crime occurred, Mr. Connelly was employed as a radio announcer for defendant WTMJ, Inc. In this action, plaintiff alleges that defendant negligently hired, retained and/or supervised Mr. Connelly and that defendant is liable for Mr. Connelly's conduct through the doctrine of respondeat superior. Presently before the court is defendant's motion for summary judgment (Doc. # 17). For the reasons stated below, the court makes the following conclusions: (1) Missouri law governs plaintiff's claims; (2) defendant did not know, nor can it be said that defendant should have known, that Mr. Connelly had a dangerous proclivity to kidnap and sexually molest someone; (3) plaintiff has stated a prima facie case for negligent supervision; and (4) Mr. Connelly was acting outside the scope and course of his employment on February 7, 1994. As a result, defendant's motion is granted in part and denied in part.

## I. Facts[1]

KQRC–FM, a division of defendant, is a 100,000 watt radio station with a listening area encompassing the entire Kansas City

---

1. The following facts are either undisputed or presented in the light most favorable to the plaintiff. In the facts section of her response papers, plaintiff baldly states that she disputes certain of defendant's factual statements. She then makes her own factual statements, which do not refer to defendant's memorandum. Plaintiff's factual statements, however, do not controvert all of the statements from defendant's memorandum that she purports to dispute. Those statements are therefore deemed admitted for purposes of this motion. D.Kan.R. 56.1.

metropolitan area, which consists of five counties in Kansas and five counties in Missouri. KQRC's studios are in Shawnee Mission, Kansas and its transmitter is in Kansas City, Missouri.

On September 13, 1993, Douglas Sorensen, the program director at KQRC, hired Mr. Connelly as a radio announcer to work the midnight to 6 a.m. and 7 p.m. to midnight shifts each Sunday. As part of the hiring process, Mr. Sorensen sought a reference from Brett Neathery, the general manager at KWPM/KSPQ, a West Plains, Missouri station where Mr. Connelly had worked full-time. Mr. Neathery told Mr. Sorensen that he had fired Mr. Connelly for insubordination. Mr. Neathery elaborated that he had reprimanded Mr. Connelly for playing an obscure song that was not on the station's playlist. Mr. Connelly did not respond professionally to the reprimand. Minutes later, Mr. Neathery reprimanded Mr. Connelly for lifting the receiver of a ringing telephone, immediately placing it back on the hook, and disconnecting the caller. Mr. Connelly became angry and made statements that Mr. Neathery considered insubordinate. On that basis, Mr. Neathery fired Mr. Connelly.

In addition to describing the events leading to Mr. Connelly's termination, Mr. Neathery told Mr. Sorensen that Mr. Connelly was talented and had a good future in radio if an understanding employer could help him overcome his difficulties in dealing with supervisors. Mr. Neathery did not make a recommendation for or against hiring Mr. Connelly.

Mr. Sorensen interviewed Mr. Connelly twice and in both interviews asked about the circumstances surrounding Mr. Connelly's termination at KWPM/KSPQ. At the conclusion of these interviews, Mr. Sorensen determined that the termination was not a source of concern. Mr. Sorensen also concluded that Mr. Connelly was responsible, dependable and honest. Mr. Sorensen did not suspect that Mr. Connelly might have a criminal record. As a result, Mr. Connelly was hired.

Mr. Sorensen did not check any court files for Mr. Connelly's criminal record or for civil matters in which Mr. Connelly was involved. Mr. Connelly, in fact, had been involved in numerous legal proceedings prior to being hired by KQRC. On March 30, 1982, Mr. Connelly pled guilty to a misdemeanor charge of trespass to an automobile. Also in 1982, Mr. Connelly pled guilty to giving a worthless check under $50, a misdemeanor. In 1984, Mr. Connelly was sued for property damages allegedly stemming from an automobile accident. The suit was dismissed without prejudice for failure to prosecute. Six years later, in 1990, Mr. Connelly and his former wife were sued for overdraft charges owed to Capitol Federal Savings and Loan Association. Defendant contends that this action was subsequently dismissed as to Mr. Connelly. Also in 1990, Melinda Schrader, who had been living with Mr. Connelly, filed for a protective order, alleging that Mr. Connelly had made approximately 50 disturbing phone calls over a four month period and stating her fear that Mr. Connelly would hurt her. Finally, multiple actions have been filed against Mr. Connelly for unpaid child support. All of these actions were filed in various courts within the listening area of KQRC.

KQRC's format is essentially all-music. Announcers are on the air approximately five minutes per hour and are not free to ad lib. Rather, announcers read weather reports, calendars of musical events, and promotions. The only exception to this format is the Monday through Friday drive-time morning show.

The station management at KQRC prepares a play list for each shift. An announcer may not play songs other than those on the play list for that shift. Even though an announcer's ability to play requests is limited to songs on the playlist, listeners may still call in, speak to the announcer and request songs. Mr. Sorensen gave Mr. Connelly a memo outlining the station's programming policies when he was hired. Mr. Connelly agreed to follow the policies. One of the instructions included in the memo was that no obscene language of any nature would be tolerated on the request line. A conversation of a sexual nature between an announcer and a listener would violate this policy.

KQRC was aware that announcers might speak to female minors on the request line.

Although KQRC records its on air broadcast, the station does not eavesdrop on or record its announcers' off the air telephone calls. Neither Mr. Sorensen nor any other employee of KQRC supervised Mr. Connelly's use of the request line to ensure that he followed the station's policies. Indeed, on Sundays, the announcer is generally the only person in the KQRC studios during his or her shift. The specific shifts worked by Mr. Connelly typically have the smallest audiences of the week.

From November 1993 until February 1994, Mr. Connelly engaged in sexually explicit conversation with plaintiff, a minor female, over the KQRC request line every weekend. On February 7, 1994, Mr. Connelly met plaintiff at a Hy–Vee grocery store near her home. Mr. Connelly took plaintiff to the Howard Johnson's Motel in downtown Kansas City, Missouri, rented a room, provided cocaine, marijuana and alcohol, and engaged in acts of oral and sexual intercourse with her.

On about February 8, 1994, KQRC learned that Mr. Connelly was suspected of having sexually abused plaintiff. KQRC immediately suspended Mr. Connelly and he never worked at the station again. Mr. Connelly, on January 6, 1995, pled guilty to kidnapping plaintiff and to having committed an act of oral sex with her. Mr. Connelly is presently serving seven and five year sentences concurrently for his crimes.

## II. Standard for Summary Judgment

 When considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party. *Jones v. Unisys Corp.*, 54 F.3d 624, 628 (10th Cir.1995). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anglemyer v. Hamilton County*

*Hosp.*, 58 F.3d 533 (10th Cir.1995). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

 Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The nonmovant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511. More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555.

## III. Discussion

In her complaint, plaintiff appears to allege that her telephone conversations with Mr. Connelly led to the events of February 7, 1994. On various theories, plaintiff seeks to recover for injuries occurring on that date and stemming from the events on that date.[2] Not surprisingly, defendant contends that, as a matter of law, all of plaintiff's theories must fail.

In addition to disputing the propriety of summary judgment as a substantive matter, the parties disagree over whether Missouri or Kansas law governs plaintiff's claims. The court turns initially to the choice of law question and then addresses the parties' negligent hiring, negligent supervision and respondeat superior arguments.[3]

---

2. Plaintiff's response papers could be read as contending that her telephone conversations with Mr. Connelly, standing by themselves, injured her. The court does not read them that way, however. If plaintiff is making such a claim, can point to Missouri law permitting recovery for such injuries, and can substantiate such injuries, she is given leave to file an amended complaint

that clearly sets forth her claims within ten days of the date hereof.

3. Plaintiff appears to have abandoned negligent retention as a theory of liability separate from negligent hiring. *See* Plaintiff's response in opposition to defendant's motion for summary judgment at 9.

## A. Choice of Law

■ A federal court sitting in diversity must apply the substantive law of the state in which it sits, including that state's choice of law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). Thus, this court looks to Kansas law to determine which state's laws should be applied. Kansas follows the *lex loci delicti* approach of the First Restatement. *Brown v. Kleen Kut Mfg. Co.*, 238 Kan. 642, 644–45, 714 P.2d 942, 944 (1986); *Ling v. Jan's Liquors*, 237 Kan. 629, 634, 703 P.2d 731 (1985). "Under this rule, the law of the state where the tort occurred is applied to the substantive rights of the parties." *Brown*, 238 Kan. at 645, 714 P.2d at 944. Although "where the tort occurred" is somewhat uncertain when tortious conduct in one state causes injury in another, the Kansas Supreme Court has stated that "under the doctrine of *lex loci delicti*, the situs of the injury determines the governing law." *Ling*, 237 Kan. at 634, 703 P.2d at 735.

■ Plaintiff concedes that the kidnapping and intercourse caused her injury in Missouri. Missouri law would therefore appear to govern her claims. Plaintiff contends, however, that Kansas law applies because Mr. Connelly was in Kansas when he spoke to her on the telephone. Even if plaintiff is correct, however, she was a resident of Missouri at the time the calls were placed. Given that plaintiff has not alleged otherwise, the court must assume that she was in Missouri when speaking with Mr. Connelly.[4] Thus, if the telephone conversations caused plaintiff injury, that injury occurred in Missouri. *Cf. Kansas Municipal Gas Agency v. Vesta Energy Co.*, 840 F.Supp. 814, 822 (D.Kan.1993) (where a fraudulent misrepresentation was made in a telephone call, the injury occurred in the state where the party heard the fraudulent misrepresentation); *Antonson v. Robertson*, 141 F.R.D. 501, 508 (D.Kan.1991) (applying the law of the state where the fraudulent misrepresentation was received). Thus, even accepting plaintiff's argument, Missouri law would govern her claims.

4. Plaintiff was not old enough to drive.

## B. Negligent Hiring

■ To establish a prima facie case for negligent hiring, a plaintiff must prove that (1) the employer knew or should have known of the employee's dangerous proclivities and (2) the employer's negligence was the proximate cause of the plaintiff's injuries. *Gray v. Ward*, No. WD 50264 (Mo.Ct.App. March 5, 1996); *Gibson v. Brewer*, No. WD 50238, 1996 WL 93511, at *4, (Mo.Ct.App. March 5, 1996); *J.H. Cosgrove Contractors, Inc. v. Kaster*, 851 S.W.2d 794, 798 (Mo.Ct. App.1993); *Gaines v. Monsanto Co.*, 655 S.W.2d 568, 570 (Mo.Ct.App.1983). In other words, "liability [for negligent hiring] turns on whether there are facts from which the employer knew or should have known of a *particular* dangerous proclivity of an employee followed by employee misconduct consistent with such dangerous proclivity by the employee." *McHaffie v. Bunch*, 891 S.W.2d 822, 825 (Mo.1995) (emphasis added). The court concludes that defendant did not know, nor can it be said that defendant should have known, that Mr. Connelly had a dangerous proclivity to kidnap and molest someone.

Plaintiff contends that the circumstances of Mr. Connelly's termination from KWPM/KSPQ or his civil and criminal records reveal Mr. Connelly's dangerous proclivities. Neither, however, suggests a proclivity to kidnap and molest someone.

If the circumstances of Mr. Connelly's termination from KWPM/KSPQ establish any proclivity regarding listeners, it is to hang up on them without speaking or, more generally, perhaps, to be rude. No reasonable juror could conclude that defendant could have or should have gleaned from Mr. Connelly's termination from KWPM/KSPQ that he had a dangerous proclivity to kidnap and molest someone.

Whether or not defendant should have known of Mr. Connelly's dangerous proclivities from his civil and criminal records raises the threshold question of whether or not defendant had a duty to investigate those records. Although the court questions

whether such a duty exists on the facts of this case, it need not resolve the question because Mr. Connelly's civil and criminal records did not suggest that he possessed the particular dangerous proclivity at issue.

Even before his deplorable acts of February 7, 1994, Mr. Connelly was considerably less than a model citizen. Even so, nothing in the criminal or civil records at the time he was hired suggested he might kidnap and sexually molest a minor. The accusation by Ms. Schrader that Mr. Connelly, with whom she had formerly been living, made approximately 50 disturbing phone calls to her comes the closest. In light of how Missouri courts have treated somewhat analogous facts, however, this accusation does not raise the inference necessary to preserve plaintiff's claim.

In *Stubbs v. Panek,* 829 S.W.2d 544 (Mo. Ct.App.1992), Steve Owens, an employee of the defendant, allegedly abducted, assaulted and murdered Tiffany Stubbs, who had been living with her parents in a triplex owned by the defendant. The court concluded that the employee's record could not support the contention that the defendant knew or should have known that Owens had a dangerous proclivity to abduct, assault and murder Ms. Stubbs. *Id.* at 547. At the time of the abduction, Mr. Owens had a charge pending against him for petty larceny and a conviction for illegal trash dumping. Mr. Owens had also been accused and charged with child abuse, although the charge was subsequently dropped. *Id.* Finding that "[t]his record [was] not sufficient to show that Owens was a risk to commit the crimes he is alleged to have committed," *id.,* the court affirmed the trial court's entry of summary judgment on behalf of the defendant. *Id.* at 549.

Similarly, in *Reed v. Hercules Construction Co.,* 693 S.W.2d 280 (Mo.Ct.App.1985), Sam Bailey, an employee of the defendant general contractor, shot the plaintiff, an employee of a subcontractor, at the work site. Although Mr. Bailey had prior convictions for carrying a concealed weapon and stealing copper from a former employer, had shot another man five years earlier, and had been seen and reported target shooting on the job site two to four months before the incident, the court concluded that it could not be said that the defendant knew or should have known of the violent propensity of Mr. Bailey. *Id.* at 282–83.

In light of these cases, the court concludes that Mr. Connelly's record does not raise an inference that Mr. Connelly possessed a dangerous proclivity to kidnap and molest someone. Summary judgment on plaintiff's negligent hiring claim must therefore be granted.

### C. *Negligent Supervision*

 Under certain circumstances, Missouri courts have recognized that, by failing to supervise its employee, a party may breach the duty of care it owes to another. For failure to supervise to be actionable in negligence, Missouri law requires a plaintiff to prove (1) a duty owed by defendant to protect the plaintiff from the injury complained; (2) breach of that duty; and (3) injury resulting to the plaintiff from the breach. *See Gray,* 1996 WL 93488, at *11 (citing *Scheibel v. Hillis,* 531 S.W.2d 285, 288 (Mo.1976)); *Smith v. Archbishop of St. Louis,* 632 S.W.2d 516, 521 (Mo.Ct.App.1982). The last element includes the question of proximate cause. *St. John Bank & Trust Co. v. City of St. John,* 679 S.W.2d 399, 401 (Mo.Ct.App.1984). "Proximate cause is whether, after the occurrence, the injury appears to be the reasonable and probable consequence of the defendant's act or omission." *Gray* (citing *Callahan v. Cardinal Glennon Hosp.,* 863 S.W.2d 852, 865 (Mo.1993)).

 Whether or not a duty of care exists turns on the existence of a sufficient relationship between plaintiff and defendant. *A.R.H. v. W.H.S.,* 876 S.W.2d 687, 691 (Mo. Ct.App.1994); *Bequette v. Buff,* 862 S.W.2d 921, 924–25 (Mo.Ct.App.1993). The question of duty presents an issue of law. *A.R.H.,* 876 S.W.2d at 691. If a duty of care exists, that duty is breached if a reasonable person would recognize that an incident of the type alleged could occur and that steps should have been taken to prevent it. *Gibson,* 1996 WL 93511, at *7; *Gray; A.R.H.,* 876 S.W.2d at 689; *Rogger v. Voyles,* 797 S.W.2d 844, 846–47 (Mo.Ct.App.1990). Defendant contends that plaintiff has failed to state a prima

facie case for negligent supervision. The court disagrees.

■ Defendant owed a duty of care to plaintiff. A radio station interacts with its listeners over the airways, over the request line, at promotional events, etc. As a business, a private radio station tries to attract listeners and structures its programming and policies with that purpose in mind. Through this process, a radio station creates and fosters a relationship with its listeners. This relationship suffices to establish a duty of care owed by a radio station to its listeners.

■ The key question on these facts, however, is not whether there is a duty, but rather was that duty breached. If no reasonable person would recognize that an incident of the type alleged could occur and that steps should have been taken to prevent it, then no breach occurred. If no breach occurred, then the defendant's duty of care did not include protecting plaintiff from the incident in question.

As noted previously, Mr. Connelly's personal history did not signal his dangerous proclivities. Nevertheless, a reasonable person could conclude that the unique combination of an announcer's public position and an announcer's duty to speak off-the-air, one-on-one with listeners over the request line could result in an incident of the type alleged. Defendant, through the request line, provides its announcers with a tool to interact privately with a listening audience that varies by age and gender. It would be reasonable to conclude that an announcer could speak with a minor, female listener over the request line, arrange a tryst, and then follow through with the arrangement after leaving work. A reasonable person could also conclude that defendant should have supervised Mr. Connelly in order to prevent such a telephone conversation from occurring while he was at work. KQRC supervises other aspects of its announcers' at work conduct. For example, the station records its daily broadcast. There is no indication that similar recordings of the request line could not be made and spot checked or that other types of supervision of the request line would be onerous or impracticable. As a result, a reasonable person could conclude that defendant breached a duty it owed to plaintiff.

Finally, a reasonable person could find that plaintiff suffered injuries beginning on February 7, 1994 which were the reasonable and probable consequence of defendant's failure to supervise. Although a close call, the court finds this to be a fact question within the proper province of the jury. Defendant has offered no specific argument to the contrary. Accordingly, the court concludes that plaintiff has stated a prima facie case for negligent supervision and summary judgment on this claim must therefore be denied.

D. *Respondeat Superior*

■ An employer is liable under the theory of respondeat superior for damages attributable to the misconduct of an employee or agent acting within the scope and course of the employment or agency. *McHaffie,* 891 S.W.2d at 825; *Helm v. Wismar,* 820 S.W.2d 495, 497 (Mo.1991). The comment to Missouri Approved Jury Instruction 13.02 cites *Haehl v. Wabash R. Co.* as the leading case on scope and course of employment. In that case, the court stated:

> The principle of respondeat superior applies only when what is complained of was done in the course of employment. The principal is responsible, not because the servant has acted in his name or under color of his employment, but because the servant was actually engaged in and about his business, and carrying out his purposes. . . . But if [the employer's] business is done, or is taking care of itself, and his servant, not being engaged in it, not concerned about it, but impelled by motives that are wholly personal to himself, and simply to gratify his own feeling[s] . . . commits an [act] . . . that has and can have no tendency to promote any purpose in which the principal is interested . . . then the wrong is the purely personal wrong of the servant, for which he, and he alone, is responsible.

24 S.W. 727, 740 (1893), *overruled in part on other grounds by Wellman v. Pacer Oil. Co.,* 504 S.W.2d 55 (Mo.1974); *accord Doe v. B.P.S. Guard Servs., Inc.,* 945 F.2d 1422, 1425 (8th Cir.1991) (quoting *Haehl*); *Bova v. St. Louis Public Serv. Co.,* 316 S.W.2d 140, 143–44 (Mo.Ct.App.1958) (quoting *Haehl*);

*see Noah v. Ziehl,* 759 S.W.2d 905, 910 (Mo. Ct.App.1988) (citing *Haehl* ). The court concludes that Mr. Connelly was not acting within the scope and course of his employment on February 7, 1994.

 Plaintiff's respondeat superior argument does not assert that the kidnapping and sexual molestation occurred within the scope and course of employment. Rather, plaintiff focuses exclusively on the telephone conversations she had with Mr. Connelly and contends that they occurred within the scope and course of Mr. Connelly's employment.

Even if plaintiff is correct, however, from the point Mr. Connelly met plaintiff outside Hy–Vee on February 7, 1994 he was not acting within the scope and course of his employment. Simply put, Mr. Connelly's actions on February 7, 1994 were impelled by motives wholly personal to himself and those actions had and could have no tendency to promote any purpose in which defendant is interested. Mr. Connelly, therefore, was not acting within the scope and course of his employment. Summary judgment must therefore be granted on plaintiff's respondeat superior claim.

IV. *Order*

**IT IS THEREFORE BY THE COURT ORDERED** that defendant's motion for summary judgment (Doc. # 17) is granted in part and denied in part.

**IT IS SO ORDERED.**